**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

                         )

**JANICE L. FIELDS,**        )

                         )

        **Plaintiff,**     )

                         )

        **v.**           )     **Civil Action No. 03-1035 (RWR)**

                         )

**TIMOTHY GEITHNER,**     )

                         )

        **Defendant.**     )

_____ )

## MEMORANDUM OPINION

Plaintiff Janice Fields, an employee of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") at the times relevant to this action,[1] has sued the Secretary of the Treasury,[2] seeking damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., alleging that the ATF discriminated against her because of her age and race and retaliated against her by denying her a promotion for which she had applied.  The Secretary moves to dismiss Fields' amended complaint or for summary judgment.  Because it is undisputed that

---

[1] In 2002, the ATF was divided into two separate and distinct bureaus: the Alcohol and Tobacco Tax and Trade Bureau ("TTB") in the Department of the Treasury, and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") in the Department of Justice.  While Fields is employed by the BATFE, her complaint arises from her non-selection for positions that are under the Department of the Treasury's control in the TTB.

[2] Secretary of the Treasury Timothy Geithner is substituted as the defendant under Federal Rule of Civil Procedure 29(d).

-2-

Fields failed to exhaust her administrative remedies regarding her claim of disparate impact and presents no prima facie evidence of that claim, and because Fields fails to rebut the defendant's legitimate, non-discriminatory reasons for its personnel decision, the defendant's motion will be granted and judgment will be entered in favor of the Secretary.

BACKGROUND

Fields, a black woman, was hired by the ATF in 1987.  In 2001, when the events giving rise to this cause of action took place, Fields was employed in the Firearms Branch of ATF at the GS-9 level.  (Def.'s Stmt. of Mat. Facts Not in Dispute ("Def.'s Stmt.") ¶¶ 1-2.)

In 2000, the ATF published vacancy announcement No. 00-489 ("Vacancy 00-489") for a position involving contact with the public regarding the Department of the Treasury's alcoholic beverage laws and regulations.  (Pl.'s Opp'n, Stmt. of Genuine Issues ("Pl.'s Stmt.") at 6 ¶ 1.)  Fields and a white woman born in 1970 named Marsha Heath applied for Vacancy 00-489.  (Def.'s Mem. in Supp. of Mot. to Dismiss or for Summ. J. ("Def.'s Mem."), Ex. 4 at 13.)  Fields was given a score of 62 and placed on the best qualified list, while Heath was given a score of 57 and was not placed on the best qualified list.  (Pl.'s Stmt. at 6-7 ¶¶ 2-4, 10.)

-3-

In 2001, the ATF published a vacancy announcement for an ATF
Specialist, Customer Service, GS-1854-11/12, in the Alcohol
Labeling and Formulation Division ("Vacancy 01-006").  (Def.'s
Mem. Ex. 1.)  The announcement asked for a supplemental
experience statement, consisting of a detailed explanation of the
applicant's work experience, training, awards, volunteering
experience, and hobbies as they related to the following
knowledge, skills, and abilities ("KSAs"):

   1.  Knowledge of (1) Federal laws and regulations
       governing the beverage alcohol industry and (2)
       industry operations, processes, and procedures.
   2.  Ability to communicate in person in order to
       resolve customer complaints, present management
       with recommendations for change, interview,
       negotiate, etc.
   3.  Ability to communicate in writing in order to
       prepare a variety of written documents.
   4.  Ability to research, analyze, evaluate, draw
       conclusions, and provide recommendations on a
       variety of issues.

(Def.'s Mem. Ex. 1.)

Fields, who had four years of experience as a labeling
specialist within the Alcohol Labeling and Formulation Division
of the ATF at that time, and Heath, who had two years of
experience as a specialist on the customer service team in that
alcohol labeling division, timely applied for Vacancy 01-006.  In
the portion of Fields' application where she explained her KSAs,
she stated that she acquired knowledge of federal laws and
regulations both through her experience from 1990 to 1994 in the
alcohol labeling division, and through a four-week training

-4-

course she participated in Georgia in 1990.  Fields also stated
that her position as a labeling specialist required her to be
able to communicate effectively, both in person and in writing
and forced her to engage in research, evaluation, and
coordination when the alcohol labeling division decided that a
label or formula did not meet federal guidelines.  (Def.'s Mem.
Ex. 3 ("Fields App.") at 38-40.)

     Marsha Heath's application explaining her KSAs stated that
in her position as a specialist on the customer service team of
the alcohol labeling division, she daily applied the Federal
Alcohol Administration Act, the Code of Federal Regulations, and
the Internal Revenue Code, when an industry member or an
inspector asked her to answer a question regarding case markings,
labels, standards of identity, and tax classification of
alcoholic beverages.  Heath's application also explained that she
prepared both formal correspondence to industry members regarding
their beverage labels and correction sheets for label
applications.  Heath also claimed to have approved or denied
requests for label use-ups and prepared e-mail responses.  At the
time of her application, she was the Contracting Officers'
technical representative for the division, which required her to
create monthly reports and proposals to the Finance Office in
order to maintain the contract and to make written
recommendations to the Contracting Officer in order to make

-5-

changes to the Statement of Work.  Heath's application also

explained her background as an Administrative Assistant, and how

that would assist her in the position.  (Def.'s Mem. Ex. 4

("Heath App."), at 9-13.)

Because they were both deemed qualified, Fields' and Heath's

applications were referred to a rating and ranking panel

consisting of Di'Anne Fletcher, Linda Wade Chapman, and G. Craig

Sabo.  (Def.'s Stmt. ¶¶ 7-8.)  Fletcher was also on the panel

that evaluated Fields and Heath for Vacancy 00-489.  (Pl.'s Stmt.

at 7 ¶ 6.)  The panel for Vacancy 01-006 did not designate Fields

on the "Best Qualified" list.  Heath was the only candidate

designated on the "Highly Qualified" list.  (Id. at 7 ¶¶ 9-11.)

According to Chapman, Heath's responses to questions that sought

to gauge the applicants' KSAs went into greater detail and were

more closely aligned with the duties and responsibilities of the

job than Fields' were, and Heath better demonstrated knowledge of

and the ability to apply the applicable federal laws and

regulations.  (Id. at 8 ¶ 13.)  Sabo also believed that Heath

demonstrated more knowledge of, and a better ability to apply,

the relevant regulations and laws.  (Id. at 8 ¶ 15.)  Fletcher,

Chapman, and Sabo were unaware of Fields' previous EEO activity

at the time they served on the rating and ranking panel.  (Id. at

8-9 ¶¶ 19-21.)  On October 15, 2001, Heath was selected for the

Vacancy 01-006 position.

-6-

On October 16, 2001, Fields filed with the Treasury
Department an administrative complaint alleging that she was
discriminated against because of her race, color, sex, and age,
and in retaliation for prior involvement in the EEO process when
she was not selected for Vacancy 00-489 position.  It stated that
Fields applied for the position listed in Vacancy 00-489 and that
she made the best qualified list, but that another candidate was
selected for the position.  Fields learned that the selected
applicant did not accept the position, and the position was
cancelled.  Fields' administrative complaint stated that Fields
"sincerely believes that [her non-selection] was just another one
of management's orchestrated games in retaliation for her
participation in the complaint process."  (Def.'s Mem. Ex. 13.)
On March 22, 2002, Fields amended her administrative complaint to
include not being selected for Vacancy 01-006.  (Def.'s Stmt.
¶ 26.)  The Treasury Department accepted for investigation

> [w]hether [Fields] was discriminated against because of
> her race (African American), color (black), sex
> (female), age (DOB: August 28, 1949(52)) and retaliated
> against her for prior involvement in the EEO process
> (filed formal complaints) when on October 25, 2001,
> management allegedly failed to advance her career to
> the position of Alcohol Tobacco Firearms Specialist,
> GS-1854-11/12 under Vacancy Announcement Number G01-
> 006.

(Def.'s Mem. Ex. 14.)  Fields did not allege in either her
original or her amended administrative complaint that the ATF's
selection procedures produced a disparate impact that adversely

-7-

affected black applicants.  On August 8, 2002, at Fields'

request, her administrative complaint was transferred to the

Equal Employment Opportunity Commission ("EEOC").[3]  (Def.'s Mem.

Ex. 15.)

Fields' amended complaint filed in this court alleges five

counts: disparate treatment based on race and age when Fields was

denied the promotion for Vacancy 01-006 (Counts One, Two, and

Four); race discrimination based on disparate impact through the

selection procedures used to judge the applications for

Vacancy 01-006 (Count Three); and retaliation (Count Five).  (Am.

Compl. ¶¶ 10-19.)

Discovery has been completed, and the Secretary moves to

dismiss Fields' amended complaint or for summary judgment.  He

argues that Fields failed to exhaust her administrative remedies

for her claim in Count Three of discrimination based upon

disparate impact, and that as to the remainder of the complaint,

Fields failed to rebut the legitimate non-discriminatory reasons

for not selecting Fields for Vacancy 01-006.  Fields opposes the

Secretary's motion, arguing that she timely exhausted her

administrative remedies regarding Count Three and that the

evidence in the record creates a genuine issue of material fact

---

[3] The parties' filings do not reveal the outcome of the EEOC
proceeding.

-8-

as to whether the defendant's legitimate, non-discriminatory reasons for not promoting Fields were pretext.

## DISCUSSION

"Summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law."  Winston v. Clough, 712 F. Supp. 2d 1, 6 (D.D.C. 2010) (citing Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing Fed. R. Civ. P. 56(c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986))).  "In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence . . . in favor of the nonmovant." Winston, 712 F. Supp. 2d at 6 (quoting Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson, 477 U.S. at 255); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "The court must determine 'whether there is a need for trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Winston, 712 F. Supp. 2d at 6 (quoting Citizens for Responsibility and Ethics

-9-

in Wash. v. Bd. of Governors of the Fed. Reserve, 669 F. Supp. 2d

126, 129 (D.D.C. 2009)(internal quotation omitted)).[4]

I.   DISPARATE IMPACT

Count Three alleges that Fields was "the victim of disparate

impact, on the basis of her race," because the rating and ranking

panel used "subjective selection procedures which slanted the

results of the selection process to favor white employees

irrespective of the qualifications of the Black applicant[.]"[4]

(Am. Compl. ¶ 15.)  The Secretary argues that the claim is

unexhausted since at no time during the administrative

proceedings or before the EEOC did Fields allege a claim of

disparate impact.  (Def.'s Mem. at 12, 14.)  He adds that Fields'

administrative complaint did not put the agency on reasonable

notice to investigate a charge of disparate impact because her

claims were focused on disparate treatment (id. at 13-14), and

that, in any event, Fields failed to present statistical evidence

that the challenged practice of using subjectively determined

criteria in the selection process adversely affected a protected

---

[4] While the defendant seeks dismissal of Count Three under
Rule 12(b), he alternatively seeks summary judgment on that and
all other counts.  (Def.'s Mem. at 2, 16.)  Discovery has been
completed and all counts may be assessed for summary judgment.
Thus, the standards governing motions to dismiss under Rule 12(b)
need not be discussed.

[4] This allegation undermines the Secretary's argument that
Fields failed to identify the specific employment practice that
she is challenging in Count Three.  (Def.'s Mem. at 16.)

-10-

group (id. at 15-16).  Fields counters that the deadline for

contacting the EEO counselor regarding her claim of disparate

impact should be tolled because the Secretary deliberately

concealed the fact that subjective criteria were used by the

rating and ranking panel.  (Pl.'s Opp'n at 33-34.)

An administrative complaint must contain enough specificity

to put an agency on notice of a potential unlawful employment

practice that the agency must investigate and correct where

warranted.  See Hopkins v. Whipple, 630 F. Supp. 2d 33, 41

(D.D.C. 2009) ("[t]he allegations in an administrative complaint

must be sufficiently specific to give a federal agency the

opportunity to handle the matter internally").  The complainant

must exhaust administrative remedies before bringing an action in

district court.

> "Before filing a Title VII suit, a federal employee
> must timely pursue her administrative remedies,
> following the requirements set forth in 29 C.F.R.
> § 1614." Hines v. Bair, 594 F. Supp. 2d 17, 22 (D.D.C.
> 2009). . . . [T]he employee may file a civil action
> once the agency issues an adverse final decision or 180
> days elapse without a decision, whichever happens
> first. See 42 U.S.C. § 2000e-16(c).  The procedural
> requirements governing a plaintiff's right to bring a
> Title VII claim in court are not treated as mere
> technicalities, because it is "part and parcel of the
> Congressional design to vest in the federal agencies
> and officials engaged in hiring and promoting personnel
> 'primary responsibility' for maintaining
> nondiscrimination in employment." Patterson v.
> Johnson, 391 F. Supp. 2d 140, 145 (D.D.C. 2006)
> (quoting Kizas v. Webster, 707 F.2d 524, 544 (D.C. Cir.
> 1983)).

-11-

Winston, 712 F. Supp. 2d at 7. Requiring specificity in a charge enforces more than a "mere technicality," and plaintiffs must comply with all administrative procedures and deadlines. Park v. Howard Univ., 71 F.3d 904, 908-909 (D.C. Cir. 1995) (ruling that a Title VII plaintiff had not exhausted her administrative remedies because her administrative complaint did not contain the allegation of hostile work environment that appeared in the complaint before the court); see also Lane v. Hilbert, No. 03-5309, 2004 W.L. 1071330, at *1 (D.C. Cir. May 12, 2004) (affirming dismissal where plaintiff's district court complaint alleged disparate treatment on account of sex, but her administrative complaint did not).

"A disparate impact claim is distinct from the disparate treatment claims [Fields] has alleged, and requires distinct elements of proof." Hopkins, 630 F. Supp. 2d at 40. "Disparate impact claims arise from employment practices that are facially neutral in their treatment of different groups, but that fall more severely on one statutorily protected group than another in practice, and which a defendant cannot justify by business necessity." Id. (citing Smith v. City of Jackson, 544 U.S. 228, 241 (2005)).

Fields did not comply with Title VII's administrative requirements for Count Three. It is undisputed that Fields' original and amended administrative complaints of discrimination

-12-

did not raise a disparate impact claim identifying the
Secretary's employment policies, and there was no discussion of a
disparate impact claim in any of the other administrative
documents.  Fields argues that the deadline should be tolled
because she learned only through the Secretary's belated
discovery production that the rating panel awarded points for
training taken only in the prior five years, a practice she
claims penalized older workers whose relevant training occurred
earlier than the cut-off point.  (Pl.'s Opp'n at 33-34.)
However, Count Three alleges racial discrimination, not age
discrimination, and Fields does not sufficiently explain the
nexus between the points system and the racial discrimination she
complains of in Count Three to toll the deadline.

Even if Fields had exhausted her administrative remedies
regarding Count Three, the Secretary is still entitled to
judgment on that claim.  "To make a prima facie showing of
disparate impact discrimination, the plaintiff must produce
sufficient evidence to allow a reasonable trier of fact to
conclude that a 'facially neutral employment practice had a
significantly discriminatory impact.'"  Menoken v. Berry, 408
Fed. Appx. 370, 372 (D.C. Cir. 2010) (quoting Connecticut v.
Teal, 457 U.S. 440, 445 (1982)), citing Anderson v. Zubieta, 180
F.3d 329, 338-39 (D.C. Cir. 1999)).  In general, plaintiffs make
such a showing by submitting statistical evidence showing that

-13-

the challenged practice causes significant disparities.  See,
e.g., Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987
(1988); Aliotta v. Bair, 614 F.3d 556, 565 (D.C. Cir. 2010)
(noting that in the context of a claim of disparate impact under
the ADEA, to demonstrate a prima facie case of disparate impact,
the plaintiff was required to "offer statistical evidence of a
kind and degree sufficient to show the employment decision
disproportionately impacts older employees" (citing Krodel v.
Young, 748 F.2d 701, 709 (D.C. Cir. 1984)));[5] Gulino v. N.Y.
State Educ. Dep't, 460 F.3d 361, 382 (2d Cir. 2006) (stating that
"a plaintiff must [] produce statistical evidence showing that
the challenged practice 'causes a disparate impact on the basis
of race, color, religion, sex, or national origin'" (quoting 42
U.S.C. § 2000e-2(k)(1)(A)(i))); Onyewuchi v. Mayorkas, 766 F.
Supp. 2d 115, 133 (D.D.C. 2011).  If a plaintiff makes that
showing, "the burden shifts to the employer to 'demonstrate that
the challenged practice is job related for the position in
question and consistent with business necessity.'"  Anderson, 180
F.3d at 339 (quoting 42 U.S.C. 2000e-2 (k)(1)(A) (i)).

     Fields has not presented any statistical evidence showing
that the challenged practice deleteriously affected black
applicants.  Because there is no genuine dispute about the fact

---

     [5] Plaintiff's reference to two affected older employees
(Pl.'s Opp'n at 36 and n.17) would not likely satisfy that
standard.

-14-

that Count Three alleges an unexhausted claim and Fields has

presented no prima facie case of racially disparate impact

discrimination, judgment will be entered for the Secretary on

Count Three.

II.  DISPARATE TREATMENT AND RETALIATION

In Counts One, Two and Four of the amended complaint, Fields

alleges that she suffered discrimination based on race in

violation of Title VII, and discrimination based on age in

violation of the ADEA, when she applied for a promotion to the

Vacancy 01-006 position, but was not placed on the best qualified

list and thus not selected for the position.  She alleges that

the position was offered to Heath, a white woman under 40 years

of age, because the defendant accorded white applicants and

people under the age of 40 more favorable treatment in the

selection process.  (Am. Compl. ¶¶ 11, 13, 17.)  In Count Five of

the amended complaint, Fields alleges that the Secretary denied

her request for a promotion in retaliation for engaging in prior

protected activity.  (Am. Compl. ¶ 19.)  The Secretary argues

that judgment should be entered in his favor on these four counts

because Fields fails to rebut the Secretary's legitimate, non-

discriminatory reasons for not placing Fields on the best-

qualified list for Vacancy 01-006 - - that Heath's application,

and specifically her description of her KSAs, more closely

matched the Secretary's need for the position than did Fields'

-15-

application - - and because Fields' qualifications were not
substantially better than Heath's qualifications.  (Def.'s Mem.
at 17-20.)  Fields disagrees, and argues that the Secretary's
reasons are pretext because when both Heath and Fields applied
for Vacancy 00-489, Fields made the best qualified list and Heath
did not, and because a comparison of Heath's qualifications and
KSAs and Fields' qualifications and KSAs shows that Fields was a
much more qualified candidate than was Heath.  (Pl.'s Mem. at 8,
14.)

     "Under Title VII, it is an 'unlawful employment practice'
for employers 'to discriminate against any individual with
respect to his compensation, terms, conditions, or privileges of
employment, because of such individual's race, color, religion,
sex, or national origin.'"  Downing v. Tapella, 729 F. Supp. 2d
88, 93 (D.D.C. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)).
Generally, proof of discrimination and retaliation claims is
governed by the burden-shifting framework established in
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  That
procedure requires the plaintiff to prove a prima facie case, the
employer to then produce evidence of a legitimate,
nondiscriminatory reason for the adverse action, and the
plaintiff to then show that the reason offered was a pretext for
discrimination.  Id. at 802-04.  However,

     [t]he court of appeals has explained that "'the prima
     facie case is a largely unnecessary sideshow'" once an

-16-

employer asserts a legitimate, nondiscriminatory reason for an adverse employment action.  Adeyemi v. Dist. of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (quoting Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).  If an employer has offered a legitimate, nondiscriminatory reason for the alleged adverse action taken, "the district court must conduct one central inquiry in considering an employer's motion for summary judgment . . . whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason [for an adverse action] was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis."  Id. at 1226.  In determining whether a plaintiff has provided sufficient evidence of discrimination, a court may consider "'(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanations for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'"  Dunaway v. Int'l Bhd. of Teamsters, 310 F.3d 758, 763 (D.C. Cir. 2002) (quoting Waterhouse v. Dist. of Columbia, 298 F.3d 989, 993 (D.C. Cir. 2002)).

Iweala v. Operational Techs. Servs., 634 F. Supp. 2d 73, 81-82 (D.D.C. 2009).

     In a non-promotion case, a plaintiff can satisfy her burden of persuasion if she can point to evidence in the record showing that "a reasonable employer would have found the plaintiff to be significantly better qualified for the job."  Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998).  "[A] plaintiff [alleging disparate treatment for a promotion] must present evidence of 'stark superiority of credentials over those of the successful candidates.'"  Hopkins, 630 F. Supp. 2d at 39 (quoting

-17-

Stewart v. Ashcroft, 352 F.3d 422, 429-30 (D.C. Cir. 2003)

(internal quotations omitted)); see also Jackson v. Gonzales, 496

F.3d 703, 707 (D.C. Cir. 2007) ("in order to justify an inference

of discrimination, the qualifications gap must be great enough to

be inherently indicative of discrimination"); McIntyre v. Peters,

460 F. Supp. 2d 125, 136 (D.D.C. 2006).

> [P]ointing to differences in qualifications that merely
> indicate a "close call" does not get [plaintiff] beyond
> summary judgment.  This Court will not reexamine
> governmental promotion decisions where it appears the
> Government was faced with a difficult decision between
> two qualified candidates, particularly where there is
> no other evidence that race played a part in the
> decision.

Stewart, 352 F.3d at 430.

The elements of a claim of retaliation are that the

plaintiff engaged in a statutorily protected activity, the

employer treated the plaintiff adversely, and a causal connection

existed between the two.  Wiley v. Glassman, 511 F.3d 151, 155

(D.C. Cir. 2007); see also Rochon v. Gonzales, 438 F.3d 1211,

1216-20 (D.C. Cir. 2007); Iweala, 634 F. Supp. 2d at 83 (quoting

Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999) (internal

quotation marks omitted)).  "'Temporal proximity' between a

complaint of discrimination and an adverse action, such as

termination, can 'support a jury's finding of a causal link.'"

Iweala, 634 F. Supp. 2d at 83 (quoting Patterson v. Johnson, 505

-18-

F.3d 1296, 1299 (D.C. Cir. 2007)) (quoting <u>Sparrow</u>, 216 F.3d at 1115).[6]

Fields' arguments fall short.  The record here shows two qualified candidates without stark differences between them in relevant qualifications for Vacancy 01-006 and the written narratives included in their applications.  Fields' arguments may show, at best, that the rating and ranking panel could have given Fields a score somewhat higher than the score she received given her breadth of experiences gained over her lengthier employment history.  That is not enough to show that the Secretary's proffered non-discriminatory reason was pretext, particularly with no further evidence of bias such as discriminatory statements or attitudes by agency officials.  <u>See</u> <u>Jackson</u>, 496 F.2d at 708 (stating that the plaintiff's evidence showing that he had more experience than another applicant "at most show[ed] that the evaluators could have given him somewhat higher scores and [the selected employee] somewhat lower scores than they did. That is not enough, however, to demonstrate that the [defendant's] reliance on comparative qualifications was a pretext for discrimination").  Objectively, Fields' application

---

[6] Fields alleges that the Secretary retaliated against her because of the numerous administrative complaints of employment discrimination that she has filed since 1994.  (<u>See</u> Am. Compl. ¶ 2; Def.'s Stmt. ¶ 3.)  However, she provides no evidence of temporal proximity between any prior complaint and the October 15, 2001 adverse decision regarding Vacancy 01-006.

-19-

was not so vastly better than Heath's for Vacancy 01-006 that it

supports the inference that the Secretary's non-discriminatory

rationale was a dishonest fabrication, and that the underlying

motive for Fields' non-selection was race or age discrimination

or retaliation.  See Desmond v. Mukasey, 530 F.3d 944, 964 (D.C.

Cir. 2008) (noting that "it will not do for the plaintiff to show

that the employer's stated reason was false if the employer

believed it in good faith; the plaintiff must establish a basis

to conclude that the employer has lied about the reason");

Hammond v. Chao, 383 F. Supp. 2d 47, 58 (D.D.C. 2005) (respecting

the employer's discretion to choose among qualified candidates).

CONCLUSION

Fields failed to exhaust her administrative remedies

regarding her claim of disparate impact and presented no prima

facie evidence of that claim.  She also failed to rebut the

defendant's legitimate, non-discriminatory reasons for its

decision not to promote her.  No genuine material issues remain

and the defendant is entitled to judgment as a matter of law.

Therefore, judgment will be entered for the Secretary.  An

appropriate order accompanies this memorandum opinion.

SIGNED this 6th day of January, 2012.


                        _____/s/_____
                        RICHARD W. ROBERTS
                        United States District Judge